**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IDA D., et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | No. 17-5272 |
| v. | : | |
| | | |
| PEDRO RIVERA, et al., | : | |
| | | |
| Defendants. | : | |

**November 19, 2018**                                                    **Anita B. Brody, J.**

### Memorandum[1]

Plaintiffs Ida and Richard D., individually and on behalf of their child J.D., and Plaintiff

Cynthia L., individually and on behalf of her child J.R., bring this action against Defendants

Pedro Rivera[2] and the Commonwealth of Pennsylvania Department of Education (collectively,

"PDE") and Khepera Charter School ("Khepera"). Plaintiffs are parents who entered into

resolution agreements on behalf of J.D. and J.R with Khepera, pursuant to the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* Plaintiffs did this to resolve

claims that Khepera did not provide them with a Free and Appropriate Public Education

("FAPE"). Since entering into these agreements, Khepera has experienced financial difficulties

and breached the agreements. This litigation raises questions concerning how and against

whom—Khepera and/or PDE—these resolution agreements should be enforced when the local

charter school no longer has the resources to satisfy its agreed upon obligations. Plaintiffs move

---

[1] Because of the many abbreviations referenced in this memorandum, a glossary of abbreviations is
attached as Appendix A.

[2] Plaintiffs bring suit against Pedro Rivera in his official capacity as the Pennsylvania Secretary of
Education.

for summary judgment against PDE and Khepera.  PDE moves for summary judgment against Plaintiffs.

For the reasons below, I will grant in part and deny in part Plaintiffs' motion for summary judgment against Khepera.  Additionally, I will grant in part and deny in part the cross-motions for summary judgment of PDE and Plaintiffs.

# I. BACKGROUND[3]

## A. The IDEA

Before relaying the facts of this case, a brief overview of the IDEA is necessary.  "The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide."  *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).  The IDEA provides that all states receiving federal education funding must guarantee all children with disabilities a FAPE.  20 U.S.C. § 1412(a)(1).  The IDEA defines a FAPE as special education and related services that: "(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program . . . ."  20 U.S.C. § 1401(9).

"The IDEA divides responsibilities for ensuring access to FAPE between State Educational Agencies ("SEAs") and Local Educational Agencies ("LEAs")."  *Lejeune v. Khepera Charter Sch.*, 327 F. Supp. 3d 785, 789 (E.D. Pa. 2018) (citing 20 U.S.C. § 1413).  To

---

[3] All facts in this section come from the Stipulated Facts jointly provided by the parties and the Joint Appendix of Exhibits, unless otherwise noted.

receive federal funding under the IDEA, a state must submit a plan to the Secretary of Education with policies and procedures that ensure that the state is complying with the IDEA and providing students with a FAPE. 20 U.S.C. § 1412. In turn, the SEA makes funding available to LEAs that comply with the SEA's plan under the IDEA. 20 U.S.C. § 1413. "The SEA is responsible for general supervision of the implementation of the IDEA in the state, while the LEA is responsible for directly providing educational programming." *Lejeune*, 327 F. Supp. 3d at 789 (citation omitted). In Pennsylvania, charter schools are considered LEAs that "assume the duty to ensure that a FAPE is available to a child with a disability in compliance with IDEA and its implementing regulations." 22 Pa. Code § 711.3(a).

An LEA provides a FAPE to a child with disabilities "by designing and implementing an individualized instructional program set forth in an Individualized Education [Program] ("IEP"), which 'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *P.P. ex rel Michael P.*, 585 F.3d at 729–30 (quoting *Shore Reg'l High Sch. Bd. Of Educ. V. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004). However, an SEA may be responsible "to provide special education and related services directly to children with disabilities residing in the area served by that local educational agency . . . if the State educational agency determines that the local educational agency . . . is unable to establish and maintain programs of free appropriate public education." 20 U.S.C. § 1413(g)(1)(B).

"To the extent a school district fails to provide a student with a FAPE, a parent may file a due process complaint on behalf of his or her child, with a subsequent hearing held before an administrative hearing officer." *G.L. v. Ligonier Valley Sch. Dist. Auth*., 802 F.3d 601, 608 (3d Cir. 2015) (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)(A)). "A party dissatisfied with the result of that hearing may then file an action in state or federal court." *Id.* (citing 20 U.S.C. § 1415(i)(2).

The IDEA, however, encourages parents to resolve their disputes prior to any due process hearing. *See* 20 U.S.C. § 1415(e),(f)(1)(B). Before a due process hearing occurs, the IDEA provides parents with the option of mediation and requires them to participate in a mandatory resolution session. *Id.* "In the case that a resolution is reached to resolve the complaint" during the resolution session, "the parties shall execute a legally binding agreement that is . . . enforceable in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(f)(1)(B)(iii).

**B. Khepera**

Khepera is a charter school that is an LEA within the meaning of the IDEA. Khepera operates pursuant to a charter authorized by the School Reform Commission ("SRC") of the School District of Philadelphia. Khepera's current charter term expires on June 30, 2019. On December 14, 2017, the SRC voted to revoke Khepera's charter at the end of the 2017-18 school year. On February 20, 2018, Khepera filed a petition to appeal the revocation to the State Charter School Appeal Board. During the appeal process, Khepera's charter remains in effect. As of March 31, 2018, there were 395 students enrolled in Khepera. Khepera is still open and operating. Khepera will not be in existence beyond June 30, 2019 (if not sooner), however, because it is not seeking a renewal of its charter. Khepera's Resp. 6, ECF No. 54. Moreover, as of the date of briefing, Khepera had not offered employment contracts to teachers or administrators for the 2018-19 school year, nor had it made final offers of enrollment for any student for the 2018-19 school year

Khepera received federal financial assistance through the 2016-17 school year, but federal funds allocated for the 2017-18 school year have not been paid to Khepera. Rather, the federal IDEA funds allocated to Khepera for the 2017-18 school year were reallocated with

Khepera's approval to PDE. These funds were given to PDE to make compensatory education funds available to certain Khepera special education students.

Khepera is experiencing financial difficulties. As of April 18, 2018, it owed approximately $1,400,000 to creditors. Additionally, Khepera had $250,000 in outstanding payroll obligations, and $200,000 in outstanding legal liability related to IDEA claims. It had approximately $15,000 in cash-on-hand, and the fair market value of its physical assets was less than $50,000. Khepera has stopped paying some of its debts in the ordinary course of business. It has laid off employees and ended school early for its students due to financial difficulties. Khepera's total financial liabilities exceed its total financial assets; this has been the case since fiscal year 2016.

### C. Students J.D. and J.R.

J.D. has been identified as a student with an intellectual disability, speech communications deficits, and visual-motor deficits, related to a diagnosis of Down Syndrome. By reason of these disabilities, J.D. is eligible for and in need of special education and related services pursuant to the IDEA. J.D. began attending Khepera as a kindergarten student during the 2012-13 school year. J.D. is currently enrolled in Khepera, but he attends Our Lady of Confidence Day School ("OLC").

In 2015, J.D.'s parents, Ida and Richard D., entered into a resolution agreement with Khepera to resolve their disputes regarding J.D.'s education ("J.D. Agreement"). The J.D. Agreement was reached in the context of a resolution session provided for under the IDEA. *See* 20 U.S.C. § 1415(f)(1)(B). Under the J.D. Agreement, Khepera agreed to, in relevant part:

- pay J.D.'s tuition and transportation costs at OLC, a private school, for the 2015-2021 school years;

- pay J.D.'s tuition and transportation costs for extended school year ("ESY") services at a private school for the summers of 2016 through 2021; and

- deposit $25,000 into a third-party special needs trust established for J.D. and administered by The Advocacy Alliance.

J.R. has also been identified as a student with an intellectual disability and visual-motor deficits, related to a diagnosis of Down Syndrome. By reason of these disabilities, J.R. is eligible for and in need of special education and related services pursuant to the IDEA. J.R. began attending Khepera as a kindergarten student during the 2014-15 school year. J.R. is currently enrolled in Khepera, but he attends OLC.

In 2016, J.R.'s parent, Cynthia L., entered into a resolution agreement with Khepera to resolve her dispute regarding J.R.'s education ("J.R. Agreement"). The J.R. Agreement was reached in the context of a resolution session provided for under the IDEA. *See* 20 U.S.C. § 1415(f)(1)(B). Under the J.R. Agreement, Khepera agreed to, in relevant part:

- pay J.R.'s tuition and transportation costs at OLC, a private school, for the 2015-2023 school years;

- pay J.R.'s tuition and transportation costs for ESY services at a private school for the summers of 2016 through 2023; and

- deposit $10,000 into a third-party special needs trust established for J.R. and administered by The Advocacy Alliance.

Both the J.D. Agreement and the J.R. Agreement (collectively, the "Resolution Agreements"), allowed the third-party special needs trusts to be used for, among other things, secondary education instruction, vocational training, and educational evaluations. Additionally, the Resolutions Agreements each stated: "Nothing in this Agreement shall constitute an

acknowledgement by the Charter School that placement at OLC or any alternative educational setting or approved private school is necessary to provide Student [] with a Free and Appropriate Education ("FAPE") or that Student [] could not be appropriately educated in another program or placement as recommended by the Charter School." J.A. 406 ¶ 10, 471-72 ¶ 10, ECF No. 50. The parties also agreed: "The Charter School's obligation to pay or reimburse the cost of tuition and/or transportation in accordance with this Agreement shall also cease immediately and without further notice . . . upon Parent's withdrawal or removal of Student [] from enrollment at the Charter School . . . ." *Id.* at 398 ¶ 1, 464 ¶ 1. Moreover, the parties stipulated: "This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and is enforceable in the state or federal courts of Pennsylvania with jurisdiction." *Id.* at 409 ¶ 20, 474 ¶ 20.

Khepera failed to fulfill its obligations under the Resolution Agreements by failing to pay the following for each J.D. and J.R:

- the full tuition amount for the 2016-17 school year;

- any tuition for the 2017-18 school year; and

- the remaining $5,000 owed to each student's special needs trust.

In 2017, as a result of Khepera's failures, Plaintiffs filed separate due process complaints with the Office of Dispute Resolution against Khepera and PDE. Plaintiffs claimed that Khepera had failed to provide a FAPE to J.D. and J.R. The Pennsylvania Special Education Hearing Officer ("Hearing Officer") never considered whether Khepera had breached the Resolution Agreements, because the only matter before the Hearing Officer was whether Khepera had denied a FAPE to J.D. and J.R.

On November 3, 2017, in separate opinions, the Hearing Officer dismissed Plaintiffs'

cases against PDE for lack of jurisdiction. On December 8, 2017, in separate opinions, the

Hearing Officer concluded that Khepera "failed to offer and provide a FAPE to [J.D and J.R.]

and continues to fail to do so." J.A. 443, 499. For both J.D. and J.R., the Hearing Officer

ordered Khepera to:

- pay the tuition it owes to OLC;

- deposit $14,300 of compensatory education into each student's special needs trust, as

  designated by his parent(s), for its failure to provide ESY services in the summers of

  2016 and 2017;[4] and

- conduct a comprehensive educational re-evaluation of each student.

Khepera failed to comply with the Hearing Officer's orders awarding relief to Plaintiffs

("Hearing Officer's Orders").

On June 10, 2017, Plaintiffs' counsel notified PDE that Khepera was failing to provide a

FAPE to students with disabilities. Pursuant to its general supervisory authority under the IDEA,

PDE, through the Bureau of Special Education, completed a fact-finding investigation

concerning the compensatory education owed to J.D and J.R. On February 22, 2018, the Bureau

of Special Education mailed separate fact-finding reports to J.D.'s parents and J.R.'s parent,

which made $19,300 in compensatory education available for each student, to be administered

through the Pennsylvania Training and Technical Assistance Network ("PaTTAN"). Plaintiffs

were advised that the PaTTAN funds would not be made available until they exhausted other

available third-party special needs funds and that the PaTTAN funds would cease to be available

---

[4] Because J.D. and J.R. had not received ESY services in the summers of 2016 and 2017, the Hearing Officer determined that each student was entitled to compensatory education funds in the amount of $7,150 for each summer. This amount was based on the Hearing Officer's determination that each student had needed ESY services for four hours per day, five days per week, for five and a half weeks for each summer, and that $65 was the value of each hour of compensatory education owed to J.D. and J.R.

after J.D. and J.R. turned twenty-one years old.

In March 2018, PDE, on behalf of Khepera, paid the outstanding tuition owed to OLC for J.D. and J.R.[5]  On March 26, 2018, PDE's counsel sent a letter to Plaintiffs' counsel, requesting that Plaintiffs dismiss all claims against PDE because it had:

- paid the balance of each student's tuition owed to OLC;
- made $19,300 in compensatory education available for each student's benefit; and
- would make arrangements to pay a qualified ESY provider for ESY services for the summer of 2018 for each student, for up to four hours per day, five days per week, for five and a half weeks, for up to a total value of $7,150.

The letter instructed Plaintiffs to contact Rebecca Fogle at PaTTAN to seek assistance locating a qualified ESY provider and to finalize payment of ESY services for the summer of 2018.  On March 28, 2018, Plaintiffs' counsel notified PDE's counsel that PDE had not offered the full measure of relief that they requested in their suit.

In the later part of May 2018, Plaintiffs sent emails to Fogle at PaTTAN, informing her that OLC does not offer ESY and they were having trouble locating any ESY program at a private school that would accept J.D. and J.R. and meet their needs.  By June 1, 2018, Fogle had responded to Plaintiffs' emails, informing them that she "was not aware of the specific schools that offer programming for students that are designed for students who are not enrolled with them."  PDE Sur-reply Exs. 28, 29, ECF No. 63.  Fogle suggested that Plaintiffs: (1) look into the Variety Club ESY program, although Fogle admitted that she didn't know if it was appropriate; (2) contact their local school district for suggestions about ESY programs in the

---

[5] To enable PDE to pay the tuition owed to OLC, the IDEA funds allocated to Khepera for the 2017-2018 school year were reallocated to PDE.  Because the amount PDE had to pay to OLC would exceed Khepera's IDEA-B grants funds, PDE informed Khepera that it "should not expect to receive any IDEA-B grant funds from its original allocation."  J.A. 333.

area; and (3) explore the five area approved private schools that Fogle listed in the letter "that may have ESY programs." *Id.* Despite Plaintiffs efforts to locate an ESY program for the summer of 2018, including contacting the various programs suggested by Fogle, J.D. and J.R. did not have access to ESY services because both J.D.'s parents and J.R.'s parent "could not identify a program that would accept" J.D. or J.R. Pls.' Mot. Expedite Ruling Exs. A ¶ 3, B ¶ 3, ECF no. 65.

In June 2018, J.D. and J.R. each received a tuition bill from OLC stating that tuition for the 2018-19 school year was due by July 15, 2018. *Id.* Exs. A ¶ 6, B ¶ 6. Neither Khepera nor PDE has paid any portion of J.D.'s or J.R.'s tuition. *Id.* Exs. A ¶ 7, B ¶ 7. At the end of July 2018, J.D.'s parents and J.R.'s parent each paid a $250 reenrollment fee to OLC. *Id.* Exs. A ¶ 10, B ¶ 10.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to

establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Plaintiffs move for summary judgment against Khepera for violating the Resolution Agreements and the Hearing Officer's Orders. Plaintiffs also move for summary judgment against PDE to satisfy Khepera's obligations because Plaintiffs contend that Khepera is unwilling or unable to fulfill its obligations to Plaintiffs. PDE moves for summary judgment in its favor contending that it is not liable to Plaintiffs.

Section 1415(f)(1)(B)(iii) provides parents the right to seek enforcement of a resolution agreement in state or federal court. 20 U.S.C. § 1415(f)(1)(B)(iii). Additionally, "[s]ection 1415(i)(2) provides for a right of '[a]ny party *aggrieved by the findings and decision*' of the

administrative proceedings to bring a civil action in state or federal court." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 276 (3d Cir. 2014) (alteration in original) (quoting 20 U.S.C. § 1415(i)(2). "[I]ndividuals seeking to enforce a favorable decision obtained at the administrative level are 'aggrieved' for purposes of the IDEA and may properly pursue such claims in court." *Id.* at 278.

As total compensation for Khepera's violations of Plaintiffs' Resolution Agreements and the Hearing Officer's Orders, Plaintiffs seek the following for each student:

- payment of all tuition and transportation costs at OLC for the 2018-19 school year;

- a deposit of $19,300 into a special needs trust administered by The Advocacy Alliance;

- payment of all tuition and transportation costs for ESY services for the summer of 2018;

- funding of a comprehensive educational evaluation; and

- continued satisfaction of the terms of the student's Resolution Agreement for its duration by ensuring that payments will be made as they become due to OLC and a private ESY provider.

### A. Plaintiffs' Motion for Summary Judgment Against Khepera

Plaintiffs move for summary judgment against Khepera for violating the Resolution Agreements and the Hearing Officer's Orders.[6] Khepera admits that it breached the Resolution Agreements and failed to comply with the Hearing Officer's Orders. The only dispute is whether there are damages. Khepera contends that Plaintiffs' motion for summary judgment should be

---

[6] Pennsylvania contract law applies to the enforcement of the Resolution Agreements. *See Lejeune*, 327 F. Supp. 3d at 795 (applying state contract law to violations of a settlement agreement under the IDEA); *J.K. v. Council Rock Sch. Dist.*, 833 F. Supp. 2d 436, 452 (E.D. Pa. 2011) (same). "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

denied as moot on the basis that Plaintiffs no longer have provable or actual damages because PDE has paid all tuition owed to OLC for the 2016-17 and 2017-18 school years, offered $19,300 in compensatory education funds to each student through PaTTAN, and made arrangements for each student to receive ESY funds for the summer 2018.

PDE's solution does not moot Plaintiffs' motion for summary judgment against Khepera because PDE has not provided complete relief to J.D. and J.R. It is indisputable that:

- tuition at OLC has not been paid for J.D. and J.R. for the 2018-19 school year;
- J.D. and J.R. did not receive ESY for services for the summer of 2018: and
- J.D. and J.R. have not received a comprehensive educational evaluation.

Moreover, Plaintiffs have rejected PDE's offer of compensatory education funds through PaTTAN.

PDE has neither offered to pay OLC for the 2018-19 school year nor has it offered to provide comprehensive educational evaluations to J.D. and J.R. Khepera is liable for these damages because J.D. and J.R. have not been compensated for them. As for the compensatory education funds, PDE has offered to provide $19,300 in compensatory education funds to each J.D. and J.R., but Plaintiffs have not accepted these funds because they contend that the offer does not fully compensate them. Similarly, while PDE has offered to pay for J.D. and J.R. to receive ESY services for the summer of 2018, Plaintiffs have not received these services. Thus, the question remains whether Plaintiffs have suffered damages, regardless of PDE's offer to provide compensatory education funds and ESY services for the summer of 2018. Additionally, Plaintiffs' request for continued satisfaction of the terms of the Resolution Agreements for their duration by ensuring that payments will be made as they become due to OLC and a private ESY provider must also be addressed.

### 1. Compensatory Education Funds

Under the Resolution Agreements, J.D. and J.R. are each owed $5,000 in compensatory education funds to be deposited in their special needs trusts administered by The Advocacy Alliance.  These special needs trusts can be used for, among other things, secondary education instruction, vocational training, and educational evaluations.  Additionally, pursuant to the Hearing Officer's Orders, J.D. and J.R. are each owed $14,300 in compensatory education funds to be deposited into special needs trusts designated by their parent(s).  The Hearing Officer's Orders place no specific restrictions on the uses for these trusts.   In contrast, the $19,300 in compensatory education funds offered by PDE to J.D. and J.R. must be administered by PaTTAN and will only be made available after J.D. and J.R. exhaust all funds in any other special needs trusts.  Additionally, the PaTTAN special needs trust does not allow for such broad uses as permitted by the Resolution Agreements and the Hearing Officer's Orders.  Furthermore, Plaintiffs' counsel has submitted a declaration that "PaTTAN has required parents to submit confidential records in support of their requests, such as private psycho-educational evaluations." Jennifer Sang Decl.¶ 7, ECF No. 58 Ex. B [hereinafter Sang. Decl.].  Cynthia L. and Ida D. have also submitted declarations that they "object to having to share . . . private educational records, including private psychological evaluations, with PDE in order to access compensatory education."  Cynthia L. Decl. ¶ 5, ECF No. 58 Ex. E [hereinafter Cynthia Decl.]; Ida D. Decl. ¶ 5, ECF No. 58 Ex. F [hereinafter Ida Decl.].  Thus, the compensatory education funds that PDE has made available to J.D. and J.R. through PaTTAN do not fulfill Khepera's obligations under the Resolution Agreements and Hearing Officer's Orders to make special needs funds available through J.D.'s and J.R.'s third-party trusts.  Therefore, I will direct Khepera to provide $19,300 in compensatory education funds to each J.D. and J.R. in a special needs trust administered by

The Advocacy Alliance.

## 2. ESY Services for the Summer of 2018

Pursuant to the Resolution Agreements, Khepera was required to provide J.D. and J.R. with ESY services for the summer of 2018.  Because Khepera was not going to meet this obligation, PDE offered, prior to the start of the summer, to pay a qualified ESY provider for ESY services for the summer of 2018 for each student, for up to four hours per day, five days per week, for five and a half weeks, for up to a total value of $7,150.  Despite Plaintiffs efforts to locate an ESY program for the summer of 2018, J.D. and J.R. did not have access to ESY services because both J.D.'s parents and J.R.'s parent "could not identify a program that would accept" J.D. or J.R.  Pls.' Mot. Expedite Ruling Exs. A ¶ 3, B ¶ 3.  Even though PDE did not provide ESY services for the summer of 2018, Khepera contends that the unfulfilled offer to pay for services has mooted Plaintiffs' claims.

Because Khepera did not meet its obligation under the Resolution Agreements to provide ESY services for the summer of 2018, Plaintiffs have suffered damages.  "[C]ompensatory education is an equitable remedy that compensates a special needs student 'for rights the district already denied him.'"  *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 497 (3d Cir. 2012) (quoting *Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 872 (3d Cir. 1990)).  Because J.D. and J.R. have been denied ESY services for the summer of 2018, the remedy available for this past denial is to order Khepera to provide additional compensatory education funds to J.D. and J.R.  The only evidence in the record indicates that the value of ESY services for a summer is $7,150, as this is the figure that both the Hearing Officer and PDE set for a summer of ESY services.  Therefore, I will direct Khepera to provide an additional $7,150 in compensatory education funds to each J.D. and J.R. in a special needs trust administered by The Advocacy

Alliance.

### 3. Continued Satisfaction of the Terms of the Resolution Agreements

Based on the Resolution Agreements, Plaintiffs also seek to hold Khepera liable for providing tuition and transportation costs for private school and ESY programming to J.D. and J.R. beyond the 2018-19 school year. The Resolution Agreements do not support a finding that Khepera would be liable beyond the 2018-19 school year, even if it failed to pay these costs as they became due. The Resolution Agreements specifically provide: "The Charter School's obligation to pay or reimburse the cost of tuition and/or transportation in accordance with this Agreement shall also cease immediately and without further notice . . . upon Parent's withdrawal or removal of Student [] from enrollment at the Charter School." J.A. 398 ¶ 1, 464 ¶ 1. Khepera's charter is set to expire at the end of June 2019 and Khepera is not seeking renewal of its charter. While it is possible that Khepera may close sooner, students will certainly be removed from enrollment at Khepera after June 2019 because the school will cease to exist, at which time Khepera's obligations to J.D. and J.R. will also cease to exist.

Because PDE's offer does not moot Plaintiffs' claims against Khepera, I will grant Plaintiffs' motion for summary judgment against Khepera and order Khepera to do the following for each J.D. and J.R.:

- pay all tuition and transportation costs at OLC for the 2018-19 school year;

- fund a comprehensive educational evaluation; and

- deposit a total of $26,450 into a special needs trust administered by The Advocacy Alliance.

I will deny the portion of Plaintiffs' motion for summary judgment seeking a declaration that Khepera will prospectively be responsible for the payment of tuition and transportation costs for

private school and ESY programming beyond the 2018-19 school year.

**B. Cross-Motions for Summary Judgment as to PDE's Liability**

Plaintiffs move for summary judgment against PDE to satisfy Khepera's obligations because Plaintiffs contend that Khepera is unwilling or unable to fulfill its obligations to Plaintiffs. PDE cross-moves for summary judgment in its favor. PDE contends that it is not legally required to satisfy Khepera's obligations to Plaintiffs. Alternatively, PDE argues that it has already tendered full relief to Plaintiffs to satisfy Khepera's IDEA obligations and Plaintiffs' claims are moot.

**1. Whether PDE Must Satisfy Khepera's Obligations to Plaintiffs**

PDE argues that it may only be held liable for Khepera's obligations if Khepera is unable to fulfill its obligations, and that Khepera's unwillingness to satisfy its obligations is not legally sufficient to compel PDE to assume Khepera's responsibilities. PDE contends that Khepera is not unable to pay because it is an open and operating school.

Recently, in *Lejeune v. Khepera Charter Sch.*, 327 F. Supp. 3d 785 (E.D. Pa. 2018), Judge Wendy Beetlestone, resolved very similar cross-motions for summary judgment involving PDE, Khepera, and parents who alleged that Khepera had breached agreements to resolve claims that it did not provide their children with a FAPE. In *Lejeune*, the parents also sought to hold PDE liable for Khepera's failure to satisfy its obligations. Based on the same facts regarding Khepera's financial status as in this case, PDE made the exact same argument that it was not legally required to satisfy Khepera's obligations. *See Lejeune*, 327 F. Supp. 3d at 797-801. Judge Beetlestone recognized that "[t]here are a limited set of circumstances in which an SEA may be required to take on an LEA's IDEA obligations. Those circumstances arise from two provisions of the IDEA that determine the scope of the SEA's obligations when an LEA fails to

provide a student . . . a FAPE." *Lejeune*, 327 F. Supp. 3d at 797. One provision of the IDEA

states that the SEA is responsible for ensuring that the LEA "meet[s] the educational standards of

the State educational agency." 20 U.S.C. § 1412(a)(11)(A)(i)(II). The other provision, regarding

LEA eligibility, provides, in relevant part:

> A State educational agency shall use the payments that would otherwise have been
> available to a local educational agency . . . to provide special education and related
> services directly to children with disabilities . . . if the State educational agency
> determines that the local educational agency . . .
>
> (B) is ***unable*** to establish and maintain programs of free appropriate public
> education that meet the requirements of subsection (a) . . . .

*Id.* § 1413(g)(1)(B) (emphasis added). Section 1413(g) further delineates that the SEA may

provide such direct services to children with disabilities "in such manner and at such locations . .

. as the State educational agency considers appropriate. Such education and services shall be

provided in accordance with this subchapter." *Id.* § 1413(g)(2).

After analysis of these provisions, including an examination of the legislative history

regarding SEA's responsibilities, and case law interpreting SEA's responsibilities, Judge

Beetlestone reached the conclusion that "an SEA must step in to provide direct services to

students when an LEA is unable to provide a FAPE, [but] it need not step in simply because an

LEA is unwilling to do so." *Lejeune*, 327 F. Supp. 3d at 799. Because Khepera admitted that it

was unable to comply with its obligations, and it had no IDEA funding source to pay the

plaintiffs, Judge Beetlestone concluded that Khepera was unable to comply with its obligations

to Plaintiffs. *Id.* at 800. Therefore, Judge Beetlestone held that PDE, as the SEA, was required

to step in and satisfy Khepera's obligations to the plaintiffs. *Id.* Based on the language in §

1413(g)(2), Judge Beetlestone acknowledged that PDE has significant discretion as to the

manner in which it provides direct services to the plaintiffs. *Id.* at 800-01. Judge Beetlestone

also recognized, however, that "the IDEA contains a caveat concerning an SEA's discretion." *Id.* at 801. "[T]he manner in which PDE may provide direct services is constrained insofar as it must comply with the IDEA provisions regarding the provision of a FAPE." *Id.*

I adopt Judge Beetlestone's legal analysis concerning the parameters of an SEA's responsibility to satisfy the obligations of an LEA. *See id.* at 797-801. Accordingly, I conclude that an SEA is only required to step in and satisfy the obligations of an LEA if the LEA is *unable* to meets its obligations. The SEA, however, has significant discretion to determine the manner in which it fulfills the LEA's obligations, so long as the SEA does so in a manner that complies with the IDEA.

In this case, Khepera admits that "due to its financial status, it is unable to make certain payments owed to Plaintiffs pursuant to the [Resolution] Agreements provisions and the [Hearing Officer's] [O]rder[s]." Khepera's Answer Am. Compl. ¶¶ 140, 149, ECF No. 26. Khepera's total financial liabilities exceed its total financial assets, and this has been the case since fiscal year 2016. Additionally, as in *Lejeune*, Khepera's IDEA funding has been reallocated to PDE, in this case to pay for J.D.'s and J.R.'s tuition owed to OLC for the 2016-17 and 2017-18 school years, and Khepera does not have any other IDEA funding source from which it could meet its obligations. Therefore, I agree with Judge Beetlestone that Khepera is unable to meet its obligations to Plaintiffs. Accordingly, PDE must step in and satisfy Khepera's obligations. PDE has significant discretion as to the manner in which it fulfills Khepera's obligations, so long as it complies with the IDEA. The question that remains is whether PDE has already satisfied Khepera's obligations and Plaintiff's claims are moot or, if it has not yet satisfied Khepera's obligations, in what manner it must do so.

## 2. Whether PDE has Satisfied Khepera's Obligations to Plaintiffs

PDE contends that Plaintiffs' motion for summary judgment should be denied as moot on the basis that PDE has already tendered full relief to Plaintiffs to satisfy Khepera's IDEA obligations because it has paid all tuition owed to OLC for the 2016-17 and 2017-18 school years, offered $19,300 in compensatory education funds to each student through PaTTAN, and made arrangements for each student to receive ESY funds for the summer of 2018.

PDE's solution does not moot Plaintiffs' motion for summary judgment because PDE has not provided complete relief to J.D. and J.R.  It is indisputable that:

- tuition at OLC has not been paid for J.D. and J.R. for the 2018-19 school year;

- J.D. and J.R. did not receive ESY services for the summer of 2018: and

- J.D. and J.R. have not received a comprehensive educational evaluation.

Moreover, Plaintiffs have rejected PDE's offer of compensatory education funds through PaTTAN.

PDE must satisfy Khepera's obligations and has not yet fully done so.  Therefore, the only remaining issue for summary judgment is how PDE must provide direct services to J.D. and J.R in order to comply with the IDEA.   Because PDE must satisfy Khepera's obligations under the Hearing Officer's Orders and the Resolution Agreements, PDE must provide tuition and costs to OLC for the 2018-19 school year,[7] fund a comprehensive educational evaluation for J.D.

---

[7] Because PDE has assumed the obligations of Khepera, PDE is required to provide tuition and costs to OLC for the 2018-19 school year for J.D. and J.R. pursuant to the IDEA's stay-put provision.  *See* 20 U.S.C. § 1415(j). Section 1415(j) states, in pertinent part: "[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ."  20 U.S.C. § 1415(j).  "Once a court ascertains the student's current educational placement, the movants are entitled to an order [maintaining that placement] without satisfaction of the usual prerequisites to injunctive relief." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 118 (3d Cir. 2014) (alteration in original) (internal quotation marks omitted).  "The operative placement could be either a public school or a private school that the local district was financing to satisfy the requirement that every child be given a *free*, appropriate

and J.R., and dispense $19,300 in compensatory education funds to J.D. and J.R. Additionally, the Resolution Agreements mandated that J.D. and J.R. receive ESY services for the summer of 2018, but J.D. and J.R. did not receive these services despite PDE's offer to fund appropriate ESY programs.

While it is simple to order PDE to pay OLC for the 2018-19 school year and provide comprehensive educational evaluations to J.D. and J.R., the manner in which PDE must provide compensatory education funds to J.D. and J.R., and whether and how PDE must compensate J.D. and J.R. for their failure to receive ESY services for the summer of 2018, requires further analysis. Additionally, Plaintiffs' request for continued satisfaction of the terms of the Resolution Agreements for their duration by ensuring that payments will be made as they become due to OLC and a private ESY provider must also be addressed.

### a. Compensatory Educations Funds

Under the Resolution Agreements, J.D. and J.R. are each owed $5,000 in compensatory education funds to be deposited into their special needs trusts administered by The Advocacy Alliance. These special needs trusts can be used for, among other things, secondary education instruction, vocational training, and educational evaluations. Additionally, pursuant to the Hearing Officer's Orders, J.D. and J.R. are each owed $14,300 in compensatory education funds to be deposited into special needs trusts designated by their parent(s). The Hearing Officer's Orders place no specific restrictions on the uses for these trusts. In contrast, the $19,300 in compensatory education funds offered by PDE to J.D. and J.R. must be administered by PaTTAN.

Plaintiffs object to PDE's solution to have their compensatory education funds

---

education." *Id.* In this case, the Hearing Officer held that the operative placement for J.D. and J.R. was the full-time life skills support at OLC.

administered by PaTTAN because the funds will only be made available after J.D. and J.R. exhaust all funds in any other special needs trusts and will only be available until they turn 21 years old.  Additionally, the PaTTAN special needs trust does not allow for such broad uses as permitted by the Resolution Agreements and Hearing Officer's Orders.  Furthermore, Plaintiffs' counsel has submitted a declaration that "PaTTAN has required parents to submit confidential records in support of their requests, such as private psycho-educational evaluations."  Sang Decl.¶ 7.  Cynthia L. and Ida D. have also submitted declarations that they "object to having to share . . . private educational records, including private psychological evaluations, with PDE in order to access compensatory education."  Cynthia Decl. ¶ 5; Ida Decl. ¶ 5.  Moreover, Plaintiffs contend that PaTTAN involves a "sluggish and cumbersome compensatory-education reimbursement process."  Pls.' Mot. Summ. J. Against PDE 13, ECF No. 53.

Plaintiffs do not contend, however, that the placement of J.D.'s and J.R.'s compensatory education funds into a trust administered by PaTTAN would violate the IDEA.  As previously discussed, SEAs have significant discretion as to the manner in which they provide direct services to a student when an LEA is unable to provide a FAPE.  *Lejeune*, 327 F. Supp. 3d at 800-01.  The only constraint is that an SEA must provide direct services to that student in a manner that complies with the IDEA.  *Id.* at 801.

"[C]ompensatory education is an equitable remedy that compensates a special needs student 'for rights the district already denied him.'"  *D.F.*, 694 F.3d at 497 (quoting *Lester*, 916 F.2d at 872).  "This judicially-created remedy . . . reflects the *broad discretion* that Congress has granted to the courts to remedy the deprivation of the right to a free appropriate education."  *G.L.*, 802 F.3d at 608 (emphasis added) (internal quotation marks omitted).  PDE's placement of compensatory education funds into trusts administered by PaTTAN is an equitable remedy that

sufficiently compensates Plaintiffs for Khepera's violation of the Resolution Agreements and past denial of a FAPE to J.D. and J.R. PDE's provision of compensatory education funds through PaTTAN complies with the IDEA. *See LeJeune*, 327 F. Supp. 3d at 801 (concluding that PDE "complied with the IDEA" when it offered to have a student's compensatory education funds administered by PaTTAN, rather than through a third-party trust as agreed upon by the student and the charter school). Accordingly, PDE's offer to provide compensatory education through PaTTAN is an appropriate exercise of its discretion to determine the manner in which it fulfills Khepera's obligations. This offer would have fulfilled PDE's statutory obligations to provide compensatory education funds to J.D. and J.R. if they had accepted PDE's solution. Therefore, I will direct PDE to provide $19,300 in compensatory education funds to each J.D. and J.R. in a manner consistent with its prior offer to provide these funds through PaTTAN.

### b. ESY Services for the Summer of 2018

Pursuant to the Resolution Agreements, Khepera was required to provide J.D. and J.R. with ESY services for the summer of 2018. Because Khepera was not going to meet this obligation, PDE offered, prior to the start of the summer, to pay a qualified ESY provider for ESY services for the summer of 2018 for each student, for up to four hours per day, five days per week, for five and a half weeks, for up to a total value of $7,150. Despite Plaintiffs efforts to locate an ESY program for the summer of 2018, J.D. and J.R. did not have access to ESY services because both J.D.'s parents and J.R.'s parent "could not identify a program that would accept" J.D. or J.R. Pls.' Mot. Expedite Ruling Exs. A ¶ 3, B ¶ 3. Even though it did not provide ESY services for the summer of 2018, PDE contends that the unfulfilled offer to pay for services has mooted Plaintiffs' claims.

While PDE has significant discretion as to how it fulfills Khepera's obligations, it must

do so in a manner that complies with the IDEA. The Hearing Officer held that Khepera's failure to provide J.D. and J.R. ESY for the summers of 2016 and 2017 constituted a denial of a FAPE. The Hearing Officer valued the ESY services for each summer at $7,150 and ordered Khepera to deposit $14,300 into a special needs trust for each student.[8] The Hearing Officer also concluded that Khepera "failed to offer and provide a FAPE to [J.D and J.R.] and continues to fail to do so." J.A. 443, 499. Although Khepera did not acknowledge in the Resolution Agreements that ESY services were necessary to provide a FAPE to J.D. and J.R., the Hearing Officer held that Khepera's failure to provide ESY in the summers of 2016 and 2017 to J.D. and J.R. was a denial of a FAPE. The Hearing Officer's determination that J.D. and J.R. needed ESY services during those summers in order for Khepera to comply with the IDEA, combined with his conclusion that Khepera continues to fail to provide a FAPE to these students, are strong indications that Khepera once again failed to provide a FAPE to J.D. and J.R. when it did not provide ESY services for the summer of 2018. Therefore, PDE must remedy Khepera's failure to provide ESY services for the summer of 2018 in order to comply with the IDEA.

"[C]ompensatory education is an equitable remedy that compensates a special needs student 'for rights the district already denied him.'" *D.F.,* 694 F.3d at 497 (quoting *Lester*, 916 F.2d at 872). Because J.D. and J.R. have been denied their contractually agreed upon ESY services for the summer of 2018, the remedy available for this past denial is to order PDE to provide additional compensatory education funds to J.D. and J.R. The only evidence in the record indicates that the value of ESY services for a summer is $7,150, as this is the figure that both the Hearing Officer and PDE set for a summer of ESY services. Therefore, I will direct

---

[8] This is the same $14,300 that PDE must now deposit into a special needs trust administered by PaTTAN for each student, along with the additional $5,000 that PDE must also provide in compensatory education funds to each student pursuant to the Resolution Agreements.

PDE to provide an additional $7,150 in compensatory education funds to each J.D. and J.R. in a manner consistent with its prior offer to provide compensatory education funds through PaTTAN.

### c. Continued Satisfaction of the Terms of the Resolution Agreements

Based on the Resolution Agreements, Plaintiffs also seek to hold PDE liable for providing tuition and transportation costs for private school and ESY programming to J.D. and J.R. beyond the 2018-19 school year. The Resolution Agreements do not support a finding that PDE would be liable beyond the 2018-19 school year, even if Khepera failed to pay these costs as they became due. The Resolution Agreements specifically provide: "The Charter School's obligation to pay or reimburse the cost of tuition and/or transportation in accordance with this Agreement shall also cease immediately and without further notice . . . upon Parent's withdrawal or removal of Student [] from enrollment at the Charter School." J.A. 398 ¶ 1, 464 ¶ 1. Khepera's charter is set to expire at the end of June 2019 and Khepera is not seeking renewal of its charter. While it is possible that Khepera may close sooner, students will certainly be removed from enrollment at Khepera after June 2019 because the school will cease to exist, at which time Khepera's and PDE's obligations to J.D. and J.R. based on the Resolution Agreements will also cease to exist.

Because PDE's offer does not moot Plaintiffs' claims, I will grant Plaintiffs' motion for summary judgment against PDE and order PDE to do the following for each J.D. and J.R.:

- pay all tuition and transportation costs at OLC for the 2018-19 school year;

- fund a comprehensive educational evaluation; and

- deposit a total of $26,450 into a special needs trust in a manner consistent with its prior offer to provide compensatory education funds through PaTTAN.

I will deny the portion of Plaintiffs' motion for summary judgment seeking a declaration that PDE will prospectively be responsible for the payment of tuition and transportation costs for private school and ESY programming beyond the 2018-19 school year. I will deny PDE's motion for summary judgment, with the exception that I will grant the portion of PDE's motion seeking judgment in its favor that PDE is not prospectively responsible for the payment of tuition and transportation costs for private school and ESY programming beyond the 2018-19 school year.

## IV. CONCLUSION

For the reasons set forth above, I will grant in part and deny in part Plaintiffs' motion for summary judgment against Khepera. Additionally, I will grant in part and deny in part the cross-motions for summary judgment of PDE and Plaintiffs.[9]

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on 11/19/2018

---

[9] Although it appears to be a near impossibility, if Khepera were to satisfy its obligations, then PDE would be absolved from stepping in and satisfying these obligations for Khepera.

**Appendix A**

**Glossary of Abbreviations**

- ESY – Extended School Year

- FAPE – Free Appropriate Public Education

- IDEA – Individuals with Disabilities Education Act

- IEP – Individualized Education Program

- LEA – Local Educational Agency

- OLC – Our Lady of Confidence Day School

- PaTTAN – Pennsylvania Training and Technical Assistance Network

- PDE – Pennsylvania Department of Education

- SEA – State Educational Agency

- SRC – School Reform Commission