## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IDA D., et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | No. 17-5272 |
| v. | : | |
| | | |
| PEDRO RIVERA, et al., | : | |
| | | |
| Defendants. | : | |

**June 25, 2019**                                              **Anita B. Brody, J.**

### Memorandum[1]

Plaintiffs Ida and Richard D., individually and on behalf of their child J.D., and Plaintiff Cynthia L., individually and on behalf of her child J.R., brought this action against Defendants Pedro Rivera[2] and the Commonwealth of Pennsylvania Department of Education (collectively, "PDE") and Khepera Charter School ("Khepera") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* On November 19, 2018, I granted in part and denied in part Plaintiffs' motion for summary judgment against Khepera and Plaintiffs' motion for summary judgment against PDE. Plaintiffs now move for reasonable attorneys' fees and costs under the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(I), because they prevailed in this action against Khepera and PDE. Specifically, Plaintiffs seek an award of $151,297.48 in attorneys' fees[3] and $499.50 in costs. For the reasons set forth below, I will grant Plaintiffs' Motion for

---

[1] Because of the many abbreviations referenced in this Memorandum, a glossary of abbreviations is attached as Appendix A.

[2] Plaintiffs bring suit against Pedro Rivera in his official capacity as the Pennsylvania Secretary of Education.

[3] Plaintiffs "lodestar," the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, is $159,260.50. Plaintiffs, however, have applied a voluntary 5% reduction to their lodestar.

Attorney's Fees and Costs.

# I. BACKGROUND

## A. The IDEA

Before relaying the facts of this case, a brief overview of the IDEA is necessary. "The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). The IDEA provides that all states receiving federal education funding must guarantee to all children with disabilities a FAPE. 20 U.S.C. § 1412(a)(1). The IDEA defines a FAPE as special education and related services that: "(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program . . . ." 20 U.S.C. § 1401(9).

"The IDEA divides responsibilities for ensuring access to FAPE between State Educational Agencies ("SEAs") and Local Educational Agencies ("LEAs")." *Lejeune v. Khepera Charter Sch.*, 327 F. Supp. 3d 785, 789 (E.D. Pa. 2018) (citing 20 U.S.C. § 1413). To receive federal funding under the IDEA, a state must submit a plan to the Secretary of Education with policies and procedures that ensure that the state is complying with the IDEA and providing students with a FAPE. 20 U.S.C. § 1412. In turn, the SEA makes funding available to LEAs that comply with the SEA's plan under the IDEA. 20 U.S.C. § 1413. "The SEA is responsible for general supervision of the implementation of the IDEA in the state, while the LEA is

responsible for directly providing educational programming." *Lejeune*, 327 F. Supp. 3d at 789 (citation omitted). In Pennsylvania, charter schools are considered LEAs that "assume the duty to ensure that a FAPE is available to a child with a disability in compliance with IDEA and its implementing regulations." 22 Pa. Code § 711.3(a).

An LEA provides a FAPE to a child with disabilities "by designing and implementing an individualized instructional program set forth in an Individualized Education [Program] ("IEP"), which 'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *P.P. ex rel Michael P.*, 585 F.3d at 729–30 (quoting *Shore Reg'l High Sch. Bd. Of Educ. V. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004). However, an SEA may be responsible "to provide special education and related services directly to children with disabilities residing in the area served by that local educational agency . . . if the State educational agency determines that the local educational agency . . . is unable to establish and maintain programs of free appropriate public education." 20 U.S.C. § 1413(g)(1)(B).

"To the extent a school district fails to provide a student with a FAPE, a parent may file a due process complaint on behalf of his or her child, with a subsequent hearing held before an administrative hearing officer." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)(A)). "A party dissatisfied with the result of that hearing may then file an action in state or federal court." *Id.* (citing 20 U.S.C. § 1415(i)(2). The IDEA, however, encourages parents to resolve their disputes prior to any due process hearing. *See* 20 U.S.C. § 1415(e),(f)(1)(B). Before a due process hearing occurs, the IDEA provides parents with the option of mediation and requires them to participate in a mandatory resolution session. *Id.* "In the case that a resolution is reached to resolve the complaint" during the resolution session, "the parties shall execute a legally binding agreement that is . . .

enforceable in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(f)(1)(B)(iii).

**B. Students J.D. and J.R.**

Both J.D. and J.R. are currently enrolled in Khepera, but they attend Our Lady of Confidence Day School ("OLC"). Khepera is a charter school that is an LEA within the meaning of the IDEA. Khepera is experiencing financial difficulties and will not be in existence beyond June 30, 2019.

J.D. has been identified as a student with an intellectual disability, speech communications deficits, and visual-motor deficits, related to a diagnosis of Down Syndrome. By reason of these disabilities, J.D. is eligible for and in need of special education and related services pursuant to the IDEA. J.D. began attending Khepera as a kindergarten student during the 2012-13 school year.

In 2015, J.D.'s parents, Ida and Richard D., entered into a resolution agreement with Khepera to resolve their disputes regarding J.D.'s education ("J.D. Agreement"). The J.D. Agreement was reached in the context of a resolution session provided for under the IDEA. *See* 20 U.S.C. § 1415(f)(1)(B). Under the J.D. Agreement, Khepera agreed to, in relevant part:

- pay J.D.'s tuition and transportation costs at OLC, a private school, for the 2015-2021 school years;

- pay J.D.'s tuition and transportation costs for extended school year ("ESY") services at a private school for the summers of 2016 through 2021; and

- deposit $25,000 into a third-party special needs trust established for J.D. and administered by The Advocacy Alliance.

J.R. has also been identified as a student with an intellectual disability and visual-motor

deficits, related to a diagnosis of Down Syndrome. By reason of these disabilities, J.R. is

eligible for and in need of special education and related services pursuant to the IDEA. J.R.

began attending Khepera as a kindergarten student during the 2014-15 school year.

In 2016, J.R.'s parent, Cynthia L., entered into a resolution agreement with Khepera to

resolve her dispute regarding J.R.'s education ("J.R. Agreement"). The J.R. Agreement was

reached in the context of a resolution session provided for under the IDEA. *See* 20 U.S.C. §

1415(f)(1)(B). Under the J.R. Agreement, Khepera agreed to, in relevant part:

- pay J.R.'s tuition and transportation costs at OLC, a private school, for the 2015-2023 school years;

- pay J.R.'s tuition and transportation costs for ESY services at a private school for the summers of 2016 through 2023; and

- deposit $10,000 into a third-party special needs trust established for J.R. and administered by The Advocacy Alliance.

Both the J.D. Agreement and the J.R. Agreement (collectively, the "Resolution

Agreements"), allowed the third-party special needs trusts to be used for, among other things,

secondary education instruction, vocational training, and educational evaluations. Additionally,

the Resolution Agreements each stated: "Nothing in this Agreement shall constitute an

acknowledgement by the Charter School that placement at OLC or any alternative educational

setting or approved private school is necessary to provide Student [] with a Free and Appropriate

Education ("FAPE") or that Student [] could not be appropriately educated in another program or

placement as recommended by the Charter School." J.A. 406 ¶ 10, 471-72 ¶ 10, ECF No. 50.

The parties also agreed: "The Charter School's obligation to pay or reimburse the cost of tuition

and/or transportation in accordance with this Agreement shall also cease immediately and

without further notice . . . upon Parent's withdrawal or removal of Student [] from enrollment at the Charter School . . . ." *Id.* at 398 ¶ 1, 464 ¶ 1. Moreover, the parties stipulated: "This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and is enforceable in the state or federal courts of Pennsylvania with jurisdiction." *Id.* at 409 ¶ 20, 474 ¶ 20.

Khepera failed to fulfill its obligations under the Resolution Agreements by failing to pay the following for each J.D. and J.R:

- the full tuition amount for the 2016-17 school year;

- any tuition for the 2017-18 school year; and

- the remaining $5,000 owed to each student's special needs trust.

In 2017, as a result of Khepera's failures, Plaintiffs filed separate due process complaints with the Office of Dispute Resolution against Khepera and PDE. Plaintiffs claimed that Khepera had failed to provide a FAPE to J.D. and J.R. On November 3, 2017, in separate opinions, the Hearing Officer dismissed Plaintiffs' cases against PDE for lack of jurisdiction. On December 8, 2017, in separate opinions, the Hearing Officer concluded that Khepera "failed to offer and provide a FAPE to [J.D and J.R.] and continues to fail to do so." J.A. 443, 499. For both J.D. and J.R., the Hearing Officer ordered Khepera to:

- pay the tuition it owes to OLC;

- deposit $14,300 of compensatory education into each student's special needs trust, as designated by his parent(s), for its failure to provide ESY services in the summers of 2016 and 2017;[4] and

---

[4] Because J.D. and J.R. had not received ESY services in the summers of 2016 and 2017, the Hearing Officer determined that each student was entitled to compensatory education funds in the amount of $7,150 for each summer. This amount was based on the Hearing Officer's determination that each

- conduct a comprehensive educational re-evaluation of each student.

Khepera failed to comply with the Hearing Officer's orders awarding relief to Plaintiffs ("Hearing Officer's Orders").

On June 10, 2017, Plaintiffs' counsel notified PDE that Khepera was failing to provide a FAPE to students with disabilities. Pursuant to its general supervisory authority under the IDEA, PDE, through the Bureau of Special Education, completed a fact-finding investigation concerning the compensatory education owed to J.D and J.R. On February 22, 2018, the Bureau of Special Education mailed separate fact-finding reports to J.D.'s parents and J.R.'s parent, which made $19,300 in compensatory education available for each student, to be administered through the Pennsylvania Training and Technical Assistance Network ("PaTTAN"). Plaintiffs were advised that the PaTTAN funds would not be made available until they exhausted other available third-party special needs funds and that the PaTTAN funds would cease to be available after J.D. and J.R. turned twenty-one years old.

In March 2018, PDE, on behalf of Khepera, paid the outstanding tuition owed to OLC for J.D. and J.R.[5] On March 26, 2018, PDE's counsel sent a letter to Plaintiffs' counsel, requesting that Plaintiffs dismiss all claims against PDE because it had:

- paid the balance of each student's tuition owed to OLC;

- made $19,300 in compensatory education available for each student's benefit; and

- would make arrangements to pay a qualified ESY provider for ESY services for the

_____

student had needed ESY services for four hours per day, five days per week, for five and a half weeks for each summer, and that $65 was the value of each hour of compensatory education owed to J.D. and J.R.

[5] To enable PDE to pay the tuition owed to OLC, the IDEA funds allocated to Khepera for the 2017-2018 school year were reallocated to PDE. Because the amount PDE had to pay to OLC would exceed Khepera's IDEA-B grants funds, PDE informed Khepera that it "should not expect to receive any IDEA-B grant funds from its original allocation." J.A. 333.

summer of 2018 for each student, for up to four hours per day, five days per week, for five and a half weeks, for up to a total value of $7,150.

The letter instructed Plaintiffs to contact Rebecca Fogle at PaTTAN to seek assistance locating a qualified ESY provider and to finalize payment of ESY services for the summer of 2018. On March 28, 2018, Plaintiffs' counsel notified PDE's counsel that PDE had not offered the full measure of relief that they requested in their suit.

In the later part of May 2018, Plaintiffs sent emails to Fogle at PaTTAN, informing her that OLC does not offer ESY and they were having trouble locating any ESY program at a private school that would accept J.D. and J.R. and meet their needs. By June 1, 2018, Fogle had responded to Plaintiffs' emails, informing them that she "was not aware of the specific schools that offer programming for students that are designed for students who are not enrolled with them." PDE Sur-reply Exs. 28, 29, ECF No. 63. Despite Plaintiffs efforts to locate an ESY program for the summer of 2018, J.D. and J.R. did not have access to ESY services because both J.D.'s parents and J.R.'s parent "could not identify a program that would accept" J.D. or J.R. Pls.' Mot. Expedite Ruling Exs. A ¶ 3, B ¶ 3, ECF no. 65.

In June 2018, J.D. and J.R. each received a tuition bill from OLC stating that tuition for the 2018-19 school year was due by July 15, 2018. *Id.* Exs. A ¶ 6, B ¶ 6. By July 15, 2018, neither Khepera nor PDE had paid any portion of J.D.'s or J.R.'s tuition. *Id.* Exs. A ¶ 7, B ¶ 7. At the end of July 2018, J.D.'s parents and J.R.'s parent each paid a $250 reenrollment fee to OLC. *Id.* Exs. A ¶ 10, B ¶ 10.

**C. Plaintiffs' Motions for Summary Judgment**

On April 30, 2018, Plaintiffs moved for summary judgment against Khepera and PDE, seeking the following for each student:

- payment of all tuition and transportation costs at OLC for the 2018-19 school year;

- a deposit of $19,300 into a special needs trust administered by The Advocacy Alliance;

- payment of all tuition and transportation costs for ESY services for the summer of 2018;

- funding of a comprehensive educational evaluation; and

- continued satisfaction of the terms of the student's Resolution Agreement for its duration by ensuring that payments will be made as they become due to OLC and a private ESY provider.

PDE argued that Plaintiffs motion for summary judgment should be denied because PDE should not be held liable for Khepera's unwillingness to satisfy its obligations to J.D. and J.R. The Court held that PDE (the SEA) was required to step in and satisfy the obligations of Khepera (an LEA) because Khepera was financially unable to meet its obligations to Plaintiffs.

Both PDE and Khepera argued that Plaintiffs' motions for summary judgment should be denied as moot because, as of March 26, 2018, PDE had paid all tuition owed to OLC for the 2016-17 and 2017-18 school years, offered $19,300 in compensatory education funds to each student through PaTTAN, and made arrangements for each student to receive ESY funds for the summer 2018. The Court held that Plaintiffs' motions for summary judgment were not moot because PDE had not provided complete relief to J.D. and J.R. On November 19, 2018, the Court granted a large majority of Plaintiffs' motions for summary judgment and ordered Khepera and PDE to do each of the following for J.D. and J.R.:

- pay all tuition and transportation costs at OLC for the 2018-19 school year;

- fund a comprehensive educational evaluation; and

- deposit a total of $26,450 into a special needs trust.[6]

---

[6] The Court ordered Khepera to deposit the money into a special needs trust administered by The

The Court denied the portion of Plaintiffs' motions for summary judgment seeking a declaration that PDE and Khepera, pursuant to the Resolution Agreements, will prospectively be responsible for the payment of tuition and transportation costs for private school and ESY programming for J.D. and J.R. beyond the 2018-19 school year.[7] The Court denied this portion of relief because Khepera would cease to exist after June 2019, at which time Khepera's obligations to J.D. and J.R. under the Resolution Agreements would cease to exist.[8]

## II. LEGAL STANDARD

Under the IDEA, a court, "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). "Generally, parties are considered prevailing parties if 'they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (quoting

---

Advocacy Alliance as required by the Resolution Agreements and the Hearing Officer's Orders. Because PDE was not subject to the Resolution Agreements and the Hearing Officer's Orders, the Court held that PDE was not required to place the funds in a trust administered by The Advocacy Alliance. Rather, the Court held that PDE's placement of compensatory education funds into a trust administered by PaTTAN is an equitable remedy that sufficiently compensates Plaintiffs for Khepera's violations of the Resolution Agreements and past denials of a FAPE to J.D. and J.R. Because placement of the funds in a trust administered by PaTTAN complies with the IDEA, the Court ordered PDE to deposit the money into a special needs trust in a manner consistent with its prior offer to provide compensatory education funds through PaTTAN.

[7] On April 30, 2018, PDE filed a cross-motion for summary judgment. The Court granted PDE's motion only as to PDE's request for a declaration that it is not prospectively responsible for the payment of tuition and transportation costs for private school and ESY programming for J.D. and J.R. beyond the 2018-19 school year. The Court otherwise denied PDE's motion in its entirety.

[8] The Resolution Agreements specifically provide: "The Charter School's obligation to pay or reimburse the cost of tuition and/or transportation in accordance with this Agreement shall also cease immediately and without further notice . . . upon Parent's withdrawal or removal of Student [] from enrollment at the Charter School." J.A. 398 ¶ 1, 464 ¶ 1. The Court reasoned that students would certainly be removed from enrollment at Khepera after June 2019 because the school would cease to exist, at which time Khepera's obligations to J.D. and J.R. under the Resolution Agreements would also cease to exist.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "A party need not achieve all of the relief requested nor even ultimately win the case to be eligible for a fee award." *Id.*

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'"[9] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley*, 461 U.S. at 433). Once the petitioner submits this evidence, the burden then shifts to the party opposing the fee petition to challenge the reasonableness of the requested fee. *Id.* "A district court should not 'decrease a fee award based on factors not raised at all by the adverse party.'" *McKenna v. City of Philadelphia*, 582 F.3d 447, 459 (3d Cir. 2009) (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir.1989)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This is referred to as the "lodestar." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005), *as amended* (Nov. 10, 2005). The presumption is that the lodestar is the reasonable fee. *Rode*, 892 F.2d at 1183. "However, the district court has the discretion to make certain adjustments to the lodestar. The party seeking adjustment has the burden of proving that an adjustment is necessary." *Id.* For instance, the lodestar can be adjusted downward if it "is not reasonable in light of the results obtained." *Id.*

## III. DISCUSSION

Defendants do not dispute that Plaintiffs are the prevailing party in this matter and are

---

[9] Although this case, and many of the cases, that set forth the legal standard for determining a fee award do so in the context of awarding attorney's fees pursuant to 42 U.S.C. § 1988, the Third Circuit "interpret[s] the language of § 1988 and the IDEA attorneys' fees provision in the same way." *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 225 (3d Cir. 2017) (internal quotation marks omitted).

entitled to reasonable attorneys' fees.[10]  However, Defendants contend that the fee award should be greatly reduced because: (1) the hourly rates charged by some of Plaintiffs' attorneys are unreasonable; (2) some of the hours expended by Plaintiffs' attorneys are unreasonable; and (3) the lodestar is unreasonable in light of Plaintiffs' failure to achieve complete success in the litigation.  In addition, Khepera objects to being held joint and severally liable with PDE for the fee award.[11]

### A. Reasonable Hourly Rates

"Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community."  *Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *see also* 20 U.S.C. § 1415(i)(3)(C) ("Fees awarded . . . shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.").  "Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Rode*, 892 F.2d at 1183.  "The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed."  *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).  "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate . . . ."  *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

---

[10] In its response to Plaintiffs' motion for attorneys' fees, Khepera initially argues that the litigation did not materially alter the relationship between Plaintiffs and Khepera.  Later in its response, however, Khepera "acknowledges that courts may permit recovery of attorney fees incurred for certain enforcement efforts, and that the Berney firm is entitled to fees for enforcing the underlying settlement agreements given Khepera's breach thereof."  Khepera's Resp. 7, ECF No. 80.  In addition, Khepera agrees that the Court should award reasonable attorneys' fees to Plaintiffs, but Khepera believes that $20,000 is a reasonable fee award.

[11] PDE does not raise any objection to joint and several liability.

Plaintiffs seek the following hourly rates for each of the Berney & Sang attorneys and the paralegal who assisted Plaintiffs: $495 for David J. Berney; $325 for Morgen Black-Smith; $255 for Kevin Golembiewski; and $100 for the paralegal. David J. Berney is the founding and senior partner of Berney & Sang. He is a graduate of the University of Pennsylvania Law School and he has over twenty-five years of experience. Berney has successfully litigated hundreds of education law cases and regularly teaches and publishes on special education law. Morgen Black-Smith is a former associate of Berney & Sang. She is a graduate of the University of Pennsylvania Law School, a former law clerk to the Honorable Harvey Bartle III of the United States District Court for the Eastern District of Pennsylvania, and she has nearly ten years of experience in public interest law. Black-Smith publishes on special education law and she has successfully litigated education cases at the administrative, state, and federal levels. Kevin Golembiewski is an associate of Berney & Sang. He is a graduate of Harvard Law School and he is a former law clerk to the Honorable Charles R. Wilson of the United States Court of Appeals for the Eleventh Circuit. Golembiewski regularly publishes on special education law and he has successfully litigated education cases at the administrative, state, and federal levels.

Defendants contend that the hourly rates for Berney and Black-Smith are unreasonable. Defendants argue that Berney's $495 hourly rate is unreasonable in light of the hourly rate he has charged in the past. Defendants point out that as late as July 2015, Berney was charging clients $367.50 per hour, and that Berney is only asking for a $367.50 hourly rate for client Lejeune G. who also brought an action against the same Defendants, involving very similar facts and claims. *See Lejeune v. Khepera Charter Sch.*, 327 F. Supp. 3d 785 (E.D. Pa. 2018) [hereinafter the "*Lejeune* litigation"]. Berney explains in his declaration, that he reviewed his firm's fee structure in 2014 and discovered that the rates it charged were substantially below market rate.

As a result, in 2015, Berney increased the firm's rates. The firm, however, kept the former fee structure for representation agreements that pre-dated the fee restructuring. LeJeune G. was billed at a rate of $367.50 based on an old representation agreement. Berney declares that his current hourly rate for fee-paying clients is $495.

Khepera also argues that Berney's hourly rate should be reduced given Khepera's financial distress. Khepera relies on *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), to argue that its financial situation should be considered. In *Hughes*, however, the Third Circuit examined the plaintiffs' financial condition in determining whether they could pay their attorneys' fees, *Hughes*, 578 F.2d at 488, and not the defendant's financial ability to pay prevailing party fees to the plaintiffs' attorneys. "[T]he losing party's financial ability to pay is not a special circumstance," to consider in determining a fee award. *Inmates of Allegheny Cty. Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir. 1983) (internal quotation marks omitted). "The fiscal woes that have befallen the school . . . can neither be visited upon the shoulders of these plaintiffs nor excuse the school . . . from its statutory obligation of paying the reasonable fees here." *E.C. v. Philadelphia Sch. Dist.*, 644 F. App'x 154, 157 (3d Cir. 2016). Khepera's financial distress does not render Berney's $495 hourly rate unreasonable.

Defendants argue that both Berney's $495 hourly rate and Black-Smith's $325 hourly rate are unreasonable in light of previous fee awards they have received. Defendants point to *Nicole B. v. Sch. Dist. of Phila.*, No. 16-1457, 2017 WL 783757, at *4 (E.D. Pa. Feb. 28, 2017), a case in which Berney was awarded $425 per hour and Black-Smith was awarded $270 per hour, to argue that these lower amounts should be the reasonable hourly rates. As Berney points out, however, the firm submitted the fee petition in *Nicole B.* in July 2016, more than two-and-a-half years before it submitted the fee petition in this Court. "The current market rate is the rate at the

time of the fee petition . . . ." *Lanni*, 259 F.3d at 149. The increase in billing rates is reasonable given Berney's and Black-Smith's additional years of practice and an adjustment of their rates for inflation.[12]

Defendants also contend that Black-Smith's hourly rate should be reduced because even though she has practiced law for twelve years, she has been practicing special education law for only two years. Plaintiffs, however, provide multiple affidavits from attorneys in the community to establish that their requested hourly rates are below or within prevailing market rates. Additionally, they provide evidence that the rates in their fee request are the firm's customary billing rates for fee-paying clients in Philadelphia. Moreover, the hourly rates that they request are within or below the hourly rate ranges provided in Community Legal Services of Philadelphia's fee schedule. "The fee schedule established by Community Legal Services, Inc. ("CLS") has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (internal quotation marks omitted). Therefore, the hourly rates requested for David J. Berney ($495), Morgen Black-Smith ($325); Kevin Golembiewski ($325), and the paralegal ($100) are reasonable because they accurately reflect the prevailing market rates in Philadelphia of lawyers of reasonably comparable skill, experience, and reputation.

**B. Reasonable Hours Expended**

A district court must exclude hours that are not reasonably expended. *Rode*, 892 F.2d at 1183. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id.* Plaintiffs seek the following hours for each of the Berney & Sang attorneys:

---

[12] Moreover, in *Nicole B.*, Berney requested $495 per hour and Black-Smith requested $325 per hour. This Court is not bound to follow the decision in *Nicole B.* to reduce their requested hourly rates.

166.1 hours for Berney; 167.6 hours for Golembiewski; and 104.9 hours for Black-Smith. Defendants contend that the following hours Plaintiffs' counsel expended are unreasonable: (1) the hours counsel spent on Plaintiffs' motions for summary judgment; (2) Berney's hours spent conferencing with and advising other attorneys; (3) Berney's hours spent reviewing the Court's procedures; (4) Berney's hours spent reviewing timesheets; and (5) the hours spent on Plaintiffs' response to Khepera's motion to quash subpoenas. Khepera further contends that the following additional hours Plaintiffs' counsel expended are unreasonable: (1) the hours spent on discovery related to Khepera's finances; (2) the hours spent on discovery requests to Khepera, which were the same discovery requests that Plaintiffs' counsel made to Khepera in the *Lejeune* litigation; and (3) the hours spent unnecessarily continuing to litigate against Khepera.

### 1. Hours Spent on Summary Judgment Motions

Defendants contend that Plaintiffs' counsel filed almost identical motions for summary judgment in the *Lejeune* litigation and therefore should not be able to recover the fees they seek for time spent on filing summary judgment motions in this litigation. While the *Lejeune* litigation and this action involved some overlap of legal issues and there was a great amount of duplication between the motions for summary judgment filed in both cases, "[w]here Plaintiffs' counsel spent time that could be attributable to multiple cases, counsel made good faith efforts to fairly and reasonably allocate time between the cases." Decl. David J. Berney, Esq., Pls.' Reply Ex. A ¶ 8, ECF No. 82 [hereinafter Berney Decl.]. Although there was a fair amount of duplication between the motions, Plaintiffs' motions presented different facts from the *Lejeune* litigation and several different issues, such as Plaintiffs' requests to maintain J.R.'s and J.D.'s placement at a private school and for J.R. and J.D. to receive educational evaluations and ESY services. Accordingly, the amount of time spent on these motions was reasonable (e.g. 27.8

hours for the motion for summary judgment against PDE).

### 2. Berney's Hours Spent Conferencing with and Advising Other Attorneys

Defendants contend that Plaintiffs' request for fees for 45.8 hours that Berney spent conferencing or corresponding with Golembiewski and Black-Smith is unreasonable. While Defendants acknowledge that conferences between attorneys are necessary, they argue that the amount of senior counsel hours spent on conferencing—almost 30% of Berney's hours billed—is unreasonable. Accordingly, they seek to reduce by 30.8 hours the number of hours Berney spent on conferences with other attorneys.

Defendants argue that the amount of conferencing that occurred is an indication of overstaffing. The use of several attorneys, however, in a case that presents "multiple, complex legal questions" may be necessary and not an indication of overstaffing. *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 272 (3d Cir. 2002). Moreover, "careful preparation often requires collaboration and rehearsal." *Id.* (internal quotation marks omitted); *see also Tenafly Eruv Assn, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 99 (3d Cir. 2006) (affirming district court's finding that 140 hours attorneys spent collectively on meetings and conference calls was reasonable "given the complexity of th[e] case and the many parties involved."). This is because there is value in attorneys collectively discussing and strategizing on complex matters.

This litigation raised difficult and somewhat novel questions concerning whether and in what manner PDE (the SEA) was required to step in and satisfy the obligations of Khepera (an LEA) because Khepera was financially unable to meet its obligations to Plaintiffs. As Plaintiffs point out, multiple attorneys represented PDE on this case and several of them participated together during conferences between the parties and with the Court. This was reasonable given

the complexity of the case. Likewise, because of the complex and novel issues raised in this litigation, it was reasonable for Berney to spend 45.8 hours conferencing or corresponding with Golembiewski and Black-Smith.

### 3. Berney's Hours Spent Reviewing the Court's Policies and Procedures

Defendants object to Plaintiffs' request for fees for 3.5 hours that Berney spent reviewing the Court's policies and procedures. Defendant's argue that this amount of time spent is excessive and this task could have been performed by a paralegal or non-legal professional. The timesheets submitted by Berney & Sang indicate that Berney has only four billing entries that reference the Court's policies and procedures. In each of these entries, with the exception of an entry for only .1 hours, Berney did other things, such as drafting letters and emails, in addition to reviewing the Court's policies and procedures. Berney declares that he reviewed the Court's policies and procedures on these four separate occasions, but the total amount of time he spent on reviewing them was only .4 hours. Berney Decl. ¶¶ 6,7. Additionally, because he spent very little time reviewing the policies and procedures on each occasion, Berney declares, "I believe it was more efficient for me to review the procedures myself than delegate the responsibility to someone else." Berney Decl. ¶ 7. Given the minimal amount of time that Berney spent on reviewing the Court's policies and procedures, and the loss of efficiency that may have resulted from delegating this task to someone else, the .4 hours Berney spent reviewing the Court's policies and procedures were reasonable.

### 4. Berney's Hours Spent Reviewing Timesheets

Defendants object to Plaintiffs' request for fees for 14.4 hours that Berney spent reviewing timesheets. Berney spent these hours reviewing the timesheets in order to eliminate redundancy and excessive billing, to clarify certain time entries, and to remove any information

protected by attorney-client and work-product privilege. Defendants concede that "it is imperative to avoid charging for redundancy and excessive billing." PDE's Resp. 7, ECF No. 79. But they believe the amount of time Berney spent was excessive. Defendants do not cite any law to support their position. Regardless, they request a "substantial downward adjustment." *Id.* Berney points out that he had a legal and ethical obligation to review them.

A plaintiff's counsel has an obligation to remove from a fee request any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."). Accordingly, it was reasonable for Berney to spend 14.4 hours reviewing timesheets to remove any hours billed that were unnecessary and to protect attorney-client and work-product privilege.[13] *See Konits v. Valley Stream Cent. High Sch. Dist.*, No. 01-6763, 2011 WL 2747872, at *2 (E.D.N.Y. July 11, 2011) ("This Court finds that 20 hours is a reasonable number of hours for preparing and organizing billing records and for researching and preparing sufficient supporting and reply papers for plaintiff's initial fee application.").

### 5. Hours Spent on Discovery Related to Khepera's Finances

PDE objects to Plaintiffs' request for fees for 9.9 hours spent responding to Khepera's motion to quash subpoenas to PNC Bank and Santander Bank. PDE contends that counsel should not be able to recover fees because they were unsuccessful in subpoenaing records from PNC Bank and Santander Bank. Khepera also objects to the time Plaintiffs' spent responding to

---

[13] Plaintiffs state that Berney only spent 13.8 hours reviewing timesheets. Because it was reasonable for Berney to spend 14.4 hours reviewing timesheets, I need not determine whether in actuality he only spent 13.8 hours reviewing them.

its motion to quash subpoenas to PNC Bank and Santander Bank, and seeks to exclude any additional hours spent on discovery related to Khepera's finances—objecting to a total of 27 attorney hours and 1.7 paralegal hours Plaintiffs spent on discovery related to Khepera's finances. Khepera argues that Plaintiffs efforts to obtain discovery from Michael Titus, LLP, an accounting firm that had stopped providing accounting services to Khepera, and PNC Bank and Santander Bank, two banks where Khepera maintained accounts, was "far-reaching and excessive discovery concerning Khepera's finances." Khepera Resp. 13.

Although Plaintiffs were unsuccessful in subpoenaing these financial records, "the Supreme Court has rejected the notion that the fee award should be reduced 'simply because the plaintiff failed to prevail on every contention raised in the law suit.' The mere failure of certain motions or the failure to use depositions is insufficient to warrant a fee reduction under *Hensley*." *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 378 (3d Cir. 1987) (quoting *Hensley*, 461 U.S. at 435); *see also Schlier v. Rice*, No. 04-1863, 2009 WL 5182164, at *6 (M.D. Pa. Dec. 22, 2009) (noting that "none of the challenged motions can be considered 'unrelated' to the relief obtained by Plaintiffs. Just because they were unsuccessful motions does not mean that they are not compensable.")

In this case, proving that Khepera was financially unable to meet its obligations to Plaintiffs was necessary for Plaintiffs to establish that PDE (the SEA) was required to step in and satisfy the obligations of Khepera (an LEA). These motions were intimately related to the relief that Plaintiffs sought and received from the Court—for PDE to be held liable to satisfy Khepera's financial obligations. Given the centrality of Khepera's finances to this action, and the success that Plaintiffs ultimately obtained, the 27 attorney hours and 1.7 paralegal hours spent on discovery related to Khepera's finances was reasonable.

**6. Hours Spent on Discovery Requests to Khepera that were Duplicative of Discovery Requests to Khepera in the *Lejeune* litigation**

Khepera objects to Plaintiffs' request for fees for all written discovery that Plaintiffs served on Khepera because Plaintiffs' served identical discovery requests on Khepera in the *Lejeune* litigation. Plaintiffs' counsel declares, however, "[w]here Plaintiffs' counsel spent time that could be attributable to multiple cases, counsel made good faith efforts to fairly and reasonably allocate time between the cases." Berney Decl. ¶ 8. Because Plaintiffs had a right to request this discovery, and they made a good faith effort to allocate the time they billed for these discovery requests between the cases, the hours spent for all written discovery that Plaintiffs served on Khepera was reasonable.

**7. Hours Spent Continuing to Litigate Against Khepera**

Khepera objects to Plaintiffs' request for fees after January 18, 2018 when it admitted in its Answer to Plaintiffs' Amended Complaint that it had breached the Resolution Agreements and was unable to cure these breaches due to its financial position. Given these admissions, Khepera contends that Plaintiffs should have moved for an immediate judgment on the pleadings rather than unnecessarily litigating the matter for another eleven months. In its Answer, however, Khepera provided only incomplete admissions. For instance, when responding to Plaintiffs' allegation that it had breached the Resolution Agreements, Khepera stated, "Admitted that Defendant has breach certain provisions of the General Release and Settlement Agreement. All remaining allegations are denied." Khepera's Answer ¶¶ 51, 82, ECF No. 26. While Khepera admitted to breaching "certain provisions" of the Resolution Agreements, it did not admit to denying J.D. and J.R. a FAPE. *See id.* ¶¶ 59, 90. Additionally, Khepera did not admit that it had failed to follow the Hearing Officer's Orders awarding relief to Plaintiffs for Khepera's failure to provide a FAPE to J.D. and J.R. *See id.* ¶¶ 129-33. Moreover, when

Plaintiffs alleged that Khepera did not have sufficient assets to cover any claims that Plaintiffs might assert that Khepera had failed to provide a FAPE to J.D. and J.R., Khepera "admit[ted] only that it does not have sufficient funds to remedy the remaining breaches of the General Releases and Settlement Agreements at issue. Defendant denies all allegations regarding any unreleased claims pertaining to an alleged failure to provide FAPE . . . All other allegations are denied as stated." *Id.* ¶ 114. Khepera has not provided any legal authority for the proposition that Plaintiffs were required to move for judgment on the pleadings based on these partial admissions it provided in the Answer. Based on the incompleteness of Khepera's admissions, it was reasonable and a sound strategy for Plaintiffs to continue to litigate and not to immediately move for a judgment against Khepera.

In the alternative, Khepera contends that even if Plaintiffs' decision to continue litigation past January 18, 2018 was reasonable, litigation should have ended when PDE made a settlement offer to Plaintiffs on March 26, 2018. Khepera contends that PDE's settlement offer provided full relief to Plaintiffs, which they should have accepted, and that their decision to reject the settlement and continue to litigate was unreasonable. This Court has already held, however, that PDE's settlement offer did not provide complete relief to J.D. and J.R. For instance, the settlement offer failed to provide J.D. and J.R. with each of the following: (1) tuition at OLC for the 2018-19 school year; (2) ESY services for the summer of 2018; and (3) a comprehensive educational evaluation. Moreover, the settlement offer did not include an offer of attorneys' fees and costs. "A parent is substantially justified in rejecting an offer that does not include the payment of reasonable attorney's fees when the school district cannot reasonably believe that no attorney's fees have accrued." *Rena C. v. Colonial Sch. Dist.*, 890 F.3d 404, 420 (3d Cir. 2018). In this case, PDE's settlement offer not only failed to include attorneys' fees, it also failed to

include complete substantive relief to Plaintiffs. After rejecting PDE's settlement offer, Plaintiffs succeeded on a large majority of their motion for summary judgment against Khepera. As a result, Khepera was ordered to provide the following additional remedies to J.D. and J.R. that were not part of PDE's settlement offer:

- pay all tuition and transportation costs at OLC for the 2018-19 school year;

- fund a comprehensive educational evaluation; and

- deposit a total of $26,450 into a special needs trust administered by The Advocacy Alliance.[14]

Therefore, Plaintiffs were substantially justified in rejecting PDE's settlement offer and their decision to continue to litigate was reasonable.

Accordingly, Plaintiffs' counsel expended reasonable hours on this litigation.

### C. Reasonable Lodestar in Light of the Results Obtained

A court may adjust the lodestar downward based on the "results obtained." *Hensley*, 461 U.S. at 434. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435. "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good

---

[14] In its settlement offer, PDE offered to provide $19,300 in compensatory education funds to each student through PaTTAN and made arrangements for each student to receive ESY funds for the summer of 2018 for up to a total value of $7,150. Plaintiffs ultimately were unable to secure ESY services for J.D. and J.R. for the summer of 2018. At summary judgment, Plaintiffs were able to obtain greater relief from Khepera in the form of a deposit of $26,450 into a special needs trust administered by The Advocacy Alliance, the trust administrator of Plaintiffs' choice, rather than through PaTTAn, the trust administrator selected by PDE.

faith." *Id.* at 436. In determining whether to adjust the lodestar, "the most critical factor is the degree of success obtained." *Id.*

Khepera again argues that Plaintiffs' decision to litigate beyond when Khepera made its admissions on January 18, 2018 and PDE made its settlement offer on March 26, 2018 was unreasonable. Accordingly, Khepera contends that Plaintiffs' decision to continue to litigate necessitates a downward adjustment of the lodestar.[15] As previously discussed, however, it was reasonable and a sound strategy for Plaintiffs to continue to litigate, and Plaintiffs received significant additional benefits from continuing to litigate against Khepera. Therefore, Khepera has not met its burden of proving that a downward adjustment is necessary.

PDE argues that the lodestar should be adjusted downward by 20% because Plaintiffs were not entirely successful in their motion for summary judgment against PDE. The Court granted a large majority of Plaintiffs' motion for summary judgment and ordered PDE to do the following for each J.D. and J.R.:

- pay all tuition and transportation costs at OLC for the 2018-19 school year;

- fund a comprehensive educational evaluation; and

- deposit a total of $26,450 into a special needs trust in a manner consistent with its March 26, 2018 settlement offer to provide compensatory education funds through PaTTAN.

The Court only denied the portion of Plaintiffs' motion for summary judgment seeking a declaration that PDE will prospectively be responsible for the payment of tuition and transportation costs for private school and ESY programming for J.D. and J.R. beyond the 2018-

---

[15] Khepera also argues for a downward adjustment based on its contention that Plaintiffs' prior counsel who negotiated the Resolution Agreements for J.D. and J.R. obtained the real success for Plaintiffs and current counsel did little to assist Plaintiffs. While prior counsel was essential to securing the Resolution Agreements, current counsel was essential to enforcing the Resolution Agreements, as well as the Hearing Officer's Orders. Thus, this is not an appropriate basis to reduce the lodestar.

19 school year.  Moreover, Plaintiffs received significant additional relief from PDE prior to Plaintiffs filing their motion for summary judgment.  As a result of the litigation, PDE also paid all outstanding tuition owed to OLC for J.D. and J.R. for the 2016-17 and 2017-18 school years. *See* December 27, 2017 Tr. Telephonic Conference 10-14, ECF No. 30.

PDE argues that a downward adjustment is necessary because the Court did not order PDE to place compensatory funds into trusts administered by The Advocacy Alliance—the trust administrator of Plaintiffs' choice; rather, it allowed PDE to select PaTTAN to administer the funds.  Additionally, PDE contends that Plaintiffs did not entirely succeed because they did not obtain prospective relief.  PDE substantially downplays the excellent success that counsel was able to achieve for Plaintiffs.  Plaintiffs succeeded in holding PDE (the SEA) liable to satisfy the obligations of Khepera (an LEA); a feat that required litigating novel legal issues and establishing the financial inability of Khepera to meet its obligations.  As a result of this litigation, PDE paid all outstanding tuition owed to OLC for J.D. and J.R. for the 2016-17, 2017-18, and 2018-19 school years, provided each student with $26,450 in compensatory education funds, and funded a comprehensive educational evaluation for each student.

The Court's holding that the $26,450 may be administered by PaTTAN rather than The Advocacy Alliance is a de minimis loss for Plaintiffs.  As for the prospective relief that Plaintiffs sought, Plaintiffs specifically requested an order that "PDE shall also be responsible for satisfying the terms of the resolution agreements that Plaintiffs and Khepera entered by making payments . . . within thirty (30) days of PDE's receipt of billing statements sent pursuant to the agreements."  Plaintiff's Mot. Summ. J. Proposed Order, ECF No. 53.  The Court denied this relief because it recognized that once Khepera ceased to exist by the end of June 2019, the obligations Khepera owed Plaintiffs pursuant to the Resolution Agreements would also cease to

exist. Thus, the Court did not enter an order holding PDE liable beyond June 2019 for satisfying the terms of the Resolution Agreements because it was obvious, given Khepera's definitive closure by the end of June 2019, that there would be no terms of the Resolution Agreements remaining to be satisfied once J.D. and J.R. could no longer be enrolled in Khepera since enrollment was a condition required for Khepera to continue to have obligations under the Resolution Agreements. The Court's failure to include language that PDE would be responsible for prospectively satisfying the terms of the Resolution Agreements was only a minor loss to Plaintiffs because, even if the Court had entered the order as Plaintiffs requested, Plaintiffs still would not have been entitled to any prospective relief after Khepera closed and its obligations under the Resolution Agreements ceased to exist. Therefore, PDE has not met its burden of proving that a downward adjustment is necessary.

Plaintiffs have voluntarily agreed to a 5% downward adjustment of the lodestar, this adjustment more than accommodates for any failure of Plaintiffs to achieve 100% success. Plaintiffs "obtained excellent results . . . . [T]he fee award should not be reduced simply because the[y] . . . failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Accordingly, the lodestar will not be reduced beyond Plaintiffs' voluntary 5% reduction.

### D. Joint and Several Liability

Plaintiffs seek to hold PDE and Khepera jointly and severally liable. In the context of deciding a fee award pursuant to 42 U.S.C. § 1988, a "district court may allocate the fee award between the responsible parties, setting the percentage for which each is liable where the claims against the defendants are separate and distinct or where culpability is significantly unequal, or it may hold the responsible parties jointly and severally liable for the fee award." *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990), *abrogation on other grounds recognized by N.Y. State*

*Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*, 272 F.3d 154, 158

(2d Cir. 2001) (citation omitted); *see also Herbst v. Ryan*, 90 F.3d 1300, 1305 (7th Cir. 1996)

(recognizing the propriety of joint and several liability in certain § 1988 fee award cases);

*Walker v. U.S. Dep't of Hous. & Urban Dev*., 99 F.3d 761, 772-73 (5th Cir. 1996) (same).  The

same considerations apply to a court determining how to allocate a fee award in the IDEA

context.  *A. v. Hartford Bd. of Educ*., No. 11-01381, 2017 WL 187138, at *12 (D. Conn. Jan. 17,

2017); *see also M.R. v. Ridley Sch. Dist*., 868 F.3d 218, 225 (3d Cir. 2017) ("[W]e interpret the

language of § 1988 and the IDEA attorneys' fees provision in the same way . . . ." (internal

quotation marks omitted)).

  Khepera does not contend that joint and several liability is unavailable in IDEA fee award

cases.  Rather, Khepera argues that Defendants in this case should not be held jointly and

severally liable because this litigation really concerned whether PDE was required to fulfill

Khepera's obligations to Plaintiffs, and Khepera played only a minor role in the litigation.

Despite Khepera's contention, however, Khepera played a leading role in this litigation: this was

a lawsuit that was only necessary because of Khepera's failure to meet its obligations to J.D. and

J.R.  In this litigation, Plaintiffs sought judgment against both Khepera (an LEA) and PDE (the

SEA) for Khepera's failure to meet its obligations under the Resolution Agreements and the

Hearing Officer's Orders.  The Court held that both Khepera and PDE were liable to Plaintiffs,

and ordered Khepera and PDE to do each of the following for J.D. and J.R.:

- pay all tuition and transportation costs at OLC for the 2018-19 school year;

- fund a comprehensive educational evaluation; and

- deposit a total of $26,450 into a special needs trust.

Thus, Khepera and PDE were found liable on the same causes of action, for the same injuries to J.R. and J.D., and ordered to provide the same relief.

"[J]oint and several liability is appropriate where the action or in action of several defendants produces a single indivisible injury." *Koster*, 903 F.2d at 140 (holding a state and a county jointly and severally liable because the result of their actions was one indivisible injury— the plaintiffs did not receive adequate emergency shelter). Put another way, "joint and several liability exists for all defendants on the non-fractionable claims"—claims that center on a common set of issues against jointly responsible parties. *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 898 (D.C. Cir. 2004).

In this case, it is indisputable that Khepera and PDE were jointly responsible to J.D. and J.R. for a single indivisible injury. Accordingly, the Court will hold Defendants jointly and severally liable to Plaintiffs.

## IV. CONCLUSION

For the reasons set forth above, I will grant Plaintiffs' Motion for Attorney's Fees and Costs. Khepera and PDE will be held jointly and severally liable for Plaintiffs' reasonable attorneys' fees in the amount of $151,297.48 and $499.50 in costs.


__S/Anita B. Brody____
ANITA B. BRODY, J.


Copies **VIA ECF** on

**Appendix A**

**Glossary of Abbreviations**

- ESY – Extended School Year

- FAPE – Free Appropriate Public Education

- IDEA – Individuals with Disabilities Education Act

- IEP – Individualized Education Program

- LEA – Local Educational Agency

- OLC – Our Lady of Confidence Day School

- PaTTAN – Pennsylvania Training and Technical Assistance Network

- PDE – Pennsylvania Department of Education

- SEA – State Educational Agency